ANDREW SCOTT *versus* WILLIAM D. WILLIAMSON.

The possession of an indorsed promissory note is *prima facie* evidence that it is the property of the holder; but although the legal property may pass to the holder, it is competent to show by parol testimony, that such note was held in trust, to be accounted for in a particular manner.

Where certain notes, payable to the plaintiff, had been indorsed and delivered to the defendant, to be by him appropriated, when collected, in part payment of notes of a much greater amount held by the defendant against the plaintiff, secured by a mortgage of land; and, afterwards, a settlement was made between the parties, wherein these notes were not accounted for by the defendant, he stating that he had never received payment therefor, and he covenanting, on such settlement, that he would not collect any further sum on his notes against the plaintiff, unless disturbed in the quiet enjoyment of the mortgaged estate; *it was held,* that the plaintiff might recover of the defendant, in an action for money had and received, the amount of the notes thus indorsed and delivered to the defendant, on proof that he had received payment thereof before the settlement.

ASSUMPSIT for $1000, money had and received. Specification, $472,92, and interest since Sept. 26, 1837. Writ dated Dec. 15, 1841. To prove the receipt of the money, the plaintiff introduced the deposition of Thomas P. Drowne, who testified that he was cashier of the People's Bank at Bangor,

from July, 1835, to April, 1838; that he kept the books of the bank all that time; that all the entries in said books, (and particularly all relating to the defendant's business at the bank) in his handwriting are true records of actual transactions, made at the time of their occurrence; and that he left the books in the possession of T. S. Dodd.

The plaintiff then called said Dodd, who brought with him said books, and testified that all the entries hereinafter referred to were in the handwriting of said Drowne. He then read and exhibited, in the books containing the records of notes deposited, the entries of which the paper hereunto annexed, marked A is a true copy; and in the journal, under date of Sept. 26, 1837, a credit to the defendant of $472,92, being amount received on these four notes, which were described, and the amount received on each specified, as in paper A; and in the leger the defendant's account with the bank, which showed the sum of $472,92, credited to the defendant, under date of Sept. 26, 1837, and the money drawn out and the account balanced and settled. He testified that he had been cashier of the bank since Drowne, and that the defendant had been a director. All the foregoing evidence was admitted, subject to objections. To prove that the money was received to his use, the plaintiff read articles of agreement executed by these parties, July 5, 1841, which contained a recital of a purchase by the plaintiff, N. Hatch and others, in 1835, of a tract of land of the defendant, for which the purchasers gave their notes to the amount of $16,000 in part payment, secured by a mortgage, and a settlement of all matters growing out of said purchase, and a release to the signers of said notes of all liability thereon; to which instrument was attached a memorandum of the notes as they stood at its date. And called said Hatch, who testified that, in July, 1841, prior to the execution of said agreement, he and the plaintiff had a conversation with the defendant for the purpose of effecting such settlement; that the amount paid to the defendant was then gone into, the indorsements on the notes of said purchasers, were examined, that the defendant then stated, that he had indorsed on those notes all

moneys collected on any notes delivered him by the plaintiff; that at that time, it was supposed that the notes described in paper A had not been collected, and the settlement was made on that supposition; that after the settlement, the plaintiff made search for these notes, and subsequently he and the witness had another interview with the defendant; that at this second interview, the plaintiff exhibited a memorandum of the notes described in paper A, which memorandum the witness held in his hand when testifying, and asked the defendant if he had collected them; the defendant said it was not possible that he had received them; that he had indorsed all that he had received on the notes, and referred to in said agreement; he read the indorsements on those notes, and the plaintiff made the memorandum of them, annexed to said agreement, which was compared by the witness and found to be correct; and that said indorsements did not include the money in controversy.

On cross-examination this witness stated that he is the brother-in-law of the plaintiff; that he and the other purchasers from the defendant had conveyed their respective shares of said land, as matter of convenience to the plaintiff; that the notes described in paper A were received for land purchased by the same company of one Wyatt, and sold in Boston in 1835, which sale, according to his impression, was prior to the defendant's deed; that he did not see Scott make his first payment to the defendant, but the payment was in money or short paper, and he did know that the whole amount of the first payment, $4,000, was paid to the defendant's satisfaction; that the plaintiff did not turn out these notes for his first payment; that the defendant said he had indorsed on notes referred to in said settlement all that he had collected; that all the notes he had received of the plaintiff had been disposed of according to his agreement with him; and after the settlement, said, if the plaintiff would show that he had collected the notes in paper A, he would then indorse the amount; and that the notes referred to in said articles of agreement had not been paid and were worthless. On direct

examination, the witness stated, that the defendant did not pretend that the notes in paper A were received as part of the first payment, but said that all moneys received by him for any notes had been disposed of according to agreement, and indorsed on said purchaser's notes ; and that the plaintiff had accounted to his associates for their respective shares of the notes mentioned in paper A. The defendant introduced the notes referred to in said settlement and his mortgage.

On this evidence the defendant consented that a default should be entered which was to be taken off and a nonsuit entered, if on this evidence the action is not maintainable ; and if the default stands, judgment was to be rendered for such sum as the plaintiff is entitled to recover. All papers used in the case, and said bank books, were to be referred to by either party.

It appeared from the copy of the bank books marked A, that the four notes, mentioned by the witness, Dodd, had been paid to the defendant as stated by the witness ; and that those notes were given by different persons to the plaintiff, of which two had been indorsed by him, and two were without indorsement.

*J. Appleton,* for the defendant, read a written argument, wherein were cited 1 Dane, 386, § 1 ; 3 Mass. R. 225 ; 7 Mass. R. 481 ; Phill. Ev. 118, 119 ; 1 East, 246 ; 3 Dane, 186, art. 4, § 1 ; 4 East, 137 ; Phill. Ev. 113 ; Gilb. Ev. 142 ; 3 Dane, 503, § 2 and 5 ; 1 Dane, 624, art. 5, § 1 ; 17 Pick. 182, 500 ; 16 Pick. 227 ; 8 Mass. R. 163 ; 7 T. R. 378 ; 5 Dane, 469, § 18 ; 6 T. R. 57 ; 2 Dane, 71, § 7 ; 2 Dane, 53, § 2, 5 ; 17 Mass. R. 396 ; 7 Pick. 244 ; 11 Mass. R. 27 ; 17 Pick. 303 ; 17 Mass. R. 581 ; 11 Mass. R. 10 ; 6 Pick. 206, 432.

*Rowe,* for the plaintiff, referred the Court to 15 Mass. R. 380 ; 3 Pick. 96 ; 13 Pick. 465 ; 18 Pick. 558 ; 20 Pick. 339.

The opinion of the Court was drawn up by

SHEPLEY J. — The plaintiff claims to recover from the defendant the sum of $472,92, received by him on certain

notes named in paper A, and not accounted for in a settlement made between the parties on July 5, 1841. The testimony introduced from the books of the People's Bank and from those in its employ, leaves no doubt, that the defendant received that amount on those notes. The argument for the defendant denies, that the testimony in the case proves, that the plaintiff was the owner of those notes, or that he has exhibited any equitable title to the amount received. Two of those notes appear to have been indorsed by the plaintiff, and with the other two not indorsed, to have been delivered to the defendant, who would thereby apparently become the legal owner of them. If the legal property passed absolutely to the defendant, he might hold them in trust to account to the plaintiff for the amount received upon them, by indorsing it on notes, which he held against him. And according to the testimony of Hatch, they were thus holden by the defendant. Hatch says, that the defendant stated during a conversation before the settlement, " that he had indorsed on those notes all moneys collected on any notes delivered him by the plaintiff; that at that time it was supposed, that the notes described in paper A, had not been collected ; and the settlement was made on that supposition." And that the defendant stated in another conversation, after the settlement, that " if the plaintiff would show, that he had collected the notes in paper A, he would then indorse the amount." It is also insisted, that these notes might have been received in the first payment made by the plaintiff for the lands purchased, or that the amount received on them might have been accounted for in the indorsements made on the other notes, due to the defendant from the plaintiff. But the testimony of Hatch shows, that neither the notes, nor the money, could have been so appropriated. He says, " the plaintiff, did not turn out these notes for his first payment," and " that the defendant did not pretend, that the notes in paper A, were received as part of first payment." He also says, " said indorsements did not include the money in controversy." By the settlement made on July 5, 1841, the defendant was entitled to retain all the money

collected on his notes against the plaintiff; and it is insisted, that if this money were collected on notes deposited as collateral security therefor, it must be considered as paid upon them as soon as collected. Such would be the presumption of law, but the testimony proves the fact to have been otherwise ; that the defendant denied, that the notes had been collected; and that the settlement was made upon the belief, that they had not been. It is further insisted, that the plaintiff cannot recover the amount received of the defendant, who holds notes against him to a much larger amount. Those notes have not been filed in set-off; and there does not appear to be any equitable right on his part to retain this money in part payment of them, because he has covenanted not to collect any further sum upon them, unless disturbed in the quiet enjoyment of the lands, for which they were given. It may be, that if the defendant had recollected, that this money had been received, he would not have settled with the plaintiff without retaining it. But it appears, that he did in fact settle upon the belief, that it had not been collected and received ; and that settlement under seal must be considered as made for a valuable consideration. If the plaintiff should recover this money, the defendant will be left in as favorable a condition by that settlement, as he expected to be. Will have received as large payments towards that purchase, as he believed that he had, or as he claimed to receive on the settlement. Hatch does not appear to have been interested in the event of this suit. The plaintiff had before accounted with him for his interest in those notes. Nor is his testimony liable to the objection, that it contradicts, varies, or explains, the settlement made in writing between the parties. That does not appear to have related to the disposition of this money, or to the notes, on which it was received.

The defendant must be considered as collecting the money for the plaintiff; and he is not therefore chargeable with interest until called upon to pay it over.

*Judgment on default.*